award or judgment at law, the injured party, if his own conduct has been perfectly blameless, ought to be relieved against it." What that court would have said in applying these principles to the case of a compromise made by an attorney in fact, as well as the attorney at law, fully and promptly communicated to his principal, who afterwards received the fruits of it, and who acquiesced for ten or twelve years in what had been done, we need be at no loss to conjecture. We say acquiesced in by his principal; for even if Benner, quoad the defendant, is to be considered as the real owner of those legacies, he received from the Amelongs the fruit of the compromise, nearly twelve years before this suit was brought. Upon the subject of acquiescence, see Pickering v. Lord Stamford, 2 Ves. Jr. 582; 1 P. Wms. 355.

3. It was contended that the defendant's intestate was guilty of laches, sufficient to charge him in equity, in not notifying the Amelongs of the action brought against him by the assignees. We by no means admit that, in a case like the present, notice was necessary, as it might be in a case of warranty, where the defendant intends, or has a right to look to a third person for compensation in case of a recovery against him. But if notice were necessary in this case to protect the executor, it was clearly dispensed with by the attorney of the Amelongs, who, being conusant of the adverse claim, at first opposed it, and afterwards withdrew from the contest, except as to the share which he sued for and recovered.

4. It was in the last place insisted, that after the opinion of the court was given in the amicable suit, by which the right of the Amelongs to the shares purchased by Benner was established, equally with their right to Mrs. Benner's share, it was the duty of the defendant's executor to have applied to the court for a new trial in the suit of the assignees, or if too late for that, for an injunction, or to have sued out a writ of error to the judgment. But had the Amelongs no remedy to prevent the assignees from receiving the fruit of their judgment? Could they not have filed a bill against the assignees and the executor to enjoin the judgment, and to obtain a decree for the amount of it to be paid over to them? No person will question the fitness of this remedy, unless indeed they had, by the compromise, defeated their own equity. Upon what pretence then can the plaintiff, who, or whose trustee, has been guilty of laches, attempt to build up an equity against the executor, by charging him with a similar fault? But why should the executor have attempted to set aside the judgment for the benefit of a party who had relinquished his claim to the subject in controversy, and who still declined to take any step to re-assert it? We think it will not be an easy matter to answer this question.

We are upon the whole of opinion that this bill ought to be dismissed.

## Case No. 9,343.

### MAYER v. GIMBEL.

[A state case. See 30 Leg. Int. 5.]

---

## Case No. 9,344.

### MAYER v. HERMANN.

[10 Blatchf. 256.] [1]

Circuit Court, S. D. New York. Dec. 12, 1872.

BANKRUPTCY — WHAT CONSTITUTES INSOLVENCY — SUBMISSION TO SUIT—EXECUTION THEREON —ATTORNEY AND CLIENT—NOTICE.

1. The inability of a merchant to meet his engagements, in the usual course of business, constitutes insolvency, within the meaning of the bankruptcy act [of 1867 (14 Stat. 517)].

2. The fact, that a merchant, in a mercantile community, who has no defence to debts maturing in his current business, submits to be sued, to compel payment of such debts, is very high evidence of inability to pay them.

3. The sale of the debtor's property, on an execution issued in such a suit, is a disposition of the debtor's property, for the benefit of the creditor, out of the usual course of business, and is evidence that the creditor has reasonable cause to believe in the debtor's insolvency, and contemplates a preference.

4. Although a debtor is not known to have yet committed an act of bankruptcy, his creditor, although he has reasonable cause to believe, or even knows, the debtor to be insolvent, may sue him, and proceed to judgment, execution and levy, for the purpose of proceeding against him in involuntary bankruptcy.

[Cited in Anderson v. Strassburger, Case No. 364.]

5. A creditor employed an attorney to collect his debt by suit. All the facts made necessary by the bankruptcy act to invalidate a preference gained by such suit, were made known to such attorney after he entered on such employment, and while engaged in collecting such debt by suit. The suit proceeded to execution and levy: Held, that the knowledge of the attorney was the knowledge of the creditor.

[Cited in Wight v. Muxlow, Case No. 17,629.]
[Cited in Mathews v. Riggs, 80 Me. 110, 13 Atl. 49; Shattuck v. Bill, 142 Mass. 64, 7 N. E. 39.]

6. It made no difference, that the information was received by the attorney after he had been retained by the debtor, and while he was advising the debtor what course to pursue, such retainer by the debtor being after the employment by the creditor and before the recovery of judgment.

[Appeal from the district court of the United States for the Southern district of New York.]

[This was a proceeding by Ferdinand Mayer against Moses Hermann, assignee in bankruptcy of Maurice Bendix and others, bankrupts, to have his lien against the bankrupts' property established, and praying that two judgments recovered by him in the state court be paid out of the proceeds of the property. From a decree of the district court dismissing the bill, plaintiff appealed.]

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]